UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HYPED HOLDINGS, LLC,

                Plaintiff,

v.

UNITED STATES OF AMERICA,

                Defendant.

**MEMORANDUM & ORDER**
22-CV-530 (HG) (JMW)

**HECTOR GONZALEZ**, United States District Judge:

    Plaintiff Hyped Holdings, LLC ("Hyped") filed this action against Defendant United States of America pursuant to 26 U.S.C. § 7426 seeking an injunction of wrongful levy enforcement and "recovery of wrongfully levied funds." ECF No. 26 ¶ 1 (Amended Complaint). Presently before the Court is Defendant's motion for summary judgment seeking dismissal of Plaintiff's complaint. ECF No. 50. For the reasons set forth below, the Court grants Defendant's motion for summary judgment.

### BACKGROUND[1]

    Hyped is a temporary staffing company formed in 2017 which "provides employees under contracts with third-party clients. . . . The workers remain employees of [Hyped], which pays wages to those employees and bears the responsibility to comply with [] employment tax laws." ECF No. 56-1 ¶¶ 1–2 (Defendant's Local Rule 56.1 Statement of Material Facts with Plaintiff's Responses). Hyped is 100% owned and controlled by Philip N. Missirlian. *Id.* ¶ 3.

    On June 25, 2013, Wonder Partners, Inc. ("Wonder"), d/b/a National Recruiting Group, a temporary staffing company, was organized. *Id.* ¶¶ 12, 14. Wonder was owned by Missirlian's daughter, Heather Gold, up until she resigned in 2017. *Id.* ¶ 19. In a subsequent tax court

---

[1]     Unless otherwise specified, the facts cited by the Court are undisputed.

litigation, Gold stated that "she was made an officer and shareholder of Wonder because her father asked her to do this as an accommodation to him." *Id.* ¶ 21. Defendant alleges that Missirlian was a manager at Wonder. *Id.* ¶ 22. Plaintiff disagrees, but admits that Missirlian worked as a consultant for Wonder in 2019 and 2020, and had signature authority on Wonder's bank accounts "for a short time in 2014." ECF No. 48-1 ¶¶ 22–23 (Plaintiff's Counterstatement in Response to Defendant's Local Rule 56.1 Statement).

On July 23, 2020, the Internal Revenue Service ("IRS") sent Wonder a letter "scheduling a telephone meeting to discuss Wonder's unpaid taxes on August 24, 2020." ECF No. 56-1 ¶ 31. On August 27, 2020, the IRS sent Wonder another letter, "demanding payment of Wonder's past-due tax liabilities by September 11, 2020, and warning Wonder that the IRS would begin collecting via levy if the taxes were not paid." *Id.* Defendant alleges that Wonder "owed federal employment tax liabilities, . . . federal unemployment tax liabilities, . . . and a civil penalty assessed pursuant to 26 U.S.C. § 6721" for a total of $3,747,163.66. *Id.* ¶ 32.

On September 21, 2020, shortly after the August 2020 IRS collection notice, Hyped and Wonder entered into an Assets Purchase Agreement ("APA"). *Id.* ¶ 34. In its complaint, Plaintiff alleges that it purchased assets from Wonder "including a client list, phone number, website and the d/b/a name of National Recruiting Group." ECF No. 26 ¶ 10 (Amended Complaint). The APA describes the "included assets" as: (i) "the Client list of [Wonder], which includes companies that [Wonder] either currently does business with or has in the past"; (ii) "all of [Wonder's] rights, title and interest in the d/b/a trade names 'National Recruiting Group,' and 'The Science People'"; (iii) "all of [Wonder's] rights, title and interest" in certain telephone and fax numbers; and (iv) "all of [Wonder's] rights, title and interest in the domain name 'www.nrgusa.com, and Website content.'" ECF No. 50-32 at 1–2 (APA). Despite the language

in the APA, in its counterstatement to Defendant's 56.1 statement, Plaintiff claims that "it did not purchase Wonder['s] . . . clients that they did business with in the past . . . . Plaintiff only purchased existing contracts that were to expire so they could show the client they were different and earn the right to have the contract under [Hyped]." ECF No. 48-1 ¶ 36.

Seeking to collect unpaid taxes owed by Wonder, beginning in October 2020, the IRS allegedly enforced tax levies against a number of Wonder's clients, including:

| Vendor/Client | Total Amount Levied |
|---|---|
| ProHEALTH Dental ("ProHEALTH") | $10,265.97[2] |
| Ringo LLC ("Ringo") | $572,392.40[3] |
| Kedrion Biopharma Inc. ("Kedrion") | $18,241.06[4] |
| H2M Architects Engineers Land Survey Architecture DPC ("H2M") | $4,284.00 |
| Certified Laboratories Inc. ("Certified Labs") | $134,669.56 |
| Webster Bank | $45,000.00 |
| RSM Electron Power, Inc. ("RSM") | $3,771.71 |

ECF No. 26 ¶¶ 11–30; ECF No. 31 ¶¶ 11–30. "All of these are levies of contract receivables except for the $45,000 levied from Webster Bank." ECF No. 56-1 ¶ 63.

---

[2] Plaintiff alleges that Defendant has enforced levies against ProHEALTH for a total amount of $58,334.46. ECF No. 26 ¶ 11 (Amended Complaint). Defendant admits the IRS received $10,265.97, but "lacks knowledge or information sufficient to admit or deny the [total] amount plaintiff claims that the IRS has collected from this levy source." ECF No. 31 ¶¶ 11 (Defendant's Answer).

[3] Plaintiff alleges that Defendant has enforced levies against Ringo LLC for a total amount of $1,187,195.54. ECF No. 26 ¶ 27. Defendant admits the IRS received $572,392.40, but denies Plaintiff's total amount. ECF No. 31 ¶¶ 15, 18–19, 26–27.

[4] Plaintiff alleges that Defendant has enforced levies against Kedrion for a total amount of $80,153.22. ECF No. 26 ¶ 20. Defendant admits the IRS received $18,241.06, but "lacks knowledge or information sufficient to admit or deny the [total] amount plaintiff claims that the IRS has collected from this levy source." ECF No. 31 ¶ 20.

On September 23, 2022, Plaintiff filed an amended complaint "seeking recovery of wrongfully levied funds." ECF No. 26 ¶ 1. Plaintiff alleges that it has an interest in the property levied by Defendant. *Id.* ¶ 33.

On January 24, 2023, Defendant filed its motion for summary judgment. ECF No. 50. On March 31, 2023, Plaintiff filed its opposition, and shortly thereafter Defendant filed its reply. ECF Nos. 55, 56.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, a court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).[5] The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). In deciding a summary judgment motion, any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995).

---

[5] Unless noted, case law quotations in this Order accept all alterations and omit all internal quotation marks, citations, and footnotes.

**DISCUSSION**

"[U]nder 26 U.S.C. § 7426(a)(1) . . . a person claiming an interest in property that the IRS has levied upon may bring a civil action in the federal courts to dissolve that levy. An action for wrongful levy under section 7426(a)(1) initially requires the plaintiff to prove title to or an ownership interest in the property levied upon, which would then shift the burden to the Government to demonstrate a nexus between the property and the taxpayer, after which the plaintiff would have the ultimate burden to prove the levy was wrongful." *Kopec v. Kopec*, 70 F. Supp. 2d 217, 219 (E.D.N.Y. 1999). "A levy will only be found to be wrongful when plaintiff proves that (1) the IRS filed a levy covering taxpayer liability against property held by the plaintiff; (2) the plaintiff had an interest or lien on that property superior to the government's interest; and (3) the levy was wrongful because the tax debtor does not own the property levied against." *Nassar Fam. Irrevocable Tr. v. United States*, No. 13-cv-5680, 2016 WL 5793737, at *11 (S.D.N.Y. Sept. 30, 2016); *see also Marshall v. United States*, 831 F. Supp. 988, 997 (E.D.N.Y. 1993) (articulating three-part test); *Century Hotels v. United States*, 952 F.2d 107, 109 (5th Cir. 1992) (holding that in order for plaintiff to prove a wrongful levy, "it was required to show: 1) the IRS filed a levy covering taxpayer liability against property held by [plaintiff], 2) [plaintiff] had an interest or lien on that property superior to the interest of the IRS, and 3) the levy was wrongful because [tax debtor] did not own the property, at least in part"). "If plaintiff fails to sustain the burden [of proving that the levy was wrongful], the levy on the property interest will be upheld." *Marshall*, 831 F. Supp. at 997.

Defendant moves for summary judgment on Plaintiff's wrongful levy claim on several grounds: (i) Plaintiff cannot establish that it has an interest in the levied contract receivables; (ii)

5

Plaintiff cannot establish that its interest is superior to that of the United States; and (iii) Plaintiff never made valid service of process on Defendant. *See generally* ECF No. 50-1.

### I. Plaintiff Has Not Established an Ownership Interest in the Levied Funds Within the Meaning of 26 U.S.C. § 7426(a)(1)

Defendant argues that it is entitled to summary judgment because Hyped does not have an ownership interest in the levied funds: (i) the APA did not transfer the contract rights from Wonder to Hyped; (ii) Wonder did not separately assign the contracts to Hyped; and (iii) Hyped did not have a right to the levied funds under any new-post APA contracts. ECF No. 50-1 at 14–15. Defendant further argues that as a result, Plaintiff cannot carry the initial burden of proving that "the IRS filed a levy covering taxpayer liability against property held by the plaintiff." *Nassar*, 2016 WL 5793737, at *11. In its opposition, Plaintiff concedes that "it did not acquire any of Wonder's receivables nor any contractual rights related to Wonder clients," but that it purchased Wonder's client list, and that it is entitled to receivables it earned separately and apart from Wonder. ECF No. 55 at 12, 14–15 ("[Q]uestions of fact concerning the percentage of levy proceeds constituting Hyped (as opposed to Wonder) receivables remain for trial . . . . [T]he IRS cannot collect receivables corresponding to services Hyped provided *after* the levy was served.") (emphasis in original).[6]

As established previously, "the initial burden of proof is on the plaintiff to prove title to or an ownership interest in the property levied upon by the Government and that the Government levied upon the property because of a tax assessment against another taxpayer." *Marshall*, 831 F. Supp. at 997; *see also Kopec*, 70 F. Supp. 2d at 219. In support of its contention that it has an

---

[6] Plaintiff's opposition contradicts its Counterstatement in Response to Defendant's Rule 56.1 Statement in which it states that it purchased the existing contracts. *See* ECF No. 48-1 ¶ 38 ("Plaintiff never purchased the accounts receivables from [Wonder], only the contracts.").

interest in the levied funds, Plaintiff submits a declaration in which Missirlian asserts that Hyped had "short-term informal agreements" with Wonder's clients, provided services to these clients, and has outstanding invoices for services rendered.  ECF No. 55-1 at 2–3 (Missirlian Declaration); ECF Nos. 55-4, 55-5, 55-6, 55-7, 55-8  (Invoices for Kedrion, ProHEALTH, Certified Labs, H2M, and RSM).  As such, Plaintiff alleges that it has met its burden to establish that Hyped has an interest in the levied funds.  The Court disagrees.

"[O]nly persons claiming specific, possessory rights are entitled to seek judicial review. . . . .  Their mere claim of a contractual right to be paid, unsecured by a lien or other specifically enforceable property interest, does not provide judicial access.  To hold otherwise would invite litigation from numerous parties only remotely aggrieved by IRS levies, with consequent disruptive effects on federal tax enforcement."  *Valley Fin., Inc. v. United States.*, 629 F.2d 162, 169 (D.C. Cir. 1980), *cert. denied*, 451 U.S. 1018 (1981) (holding that general creditors without a security interest in the property seized did not having standing to sue); *see also Austin & Laurato, P.A. v. United States*, 539 F. App'x 957, 960 (11th Cir. 2013) ("[T]he right of a third party to challenge a wrongful levy is confined to persons who have a fee simple or equivalent interest, a possessory interest, or a security interest in the property levied upon.") (citing *Frierdich v. United States*, 985 F.2d 379, 383 (7th Cir. 1993)); *Goodrich v. United States*, 3 F.4th 776, 780 (5th Cir. 2021) ("[U]nsecured creditors cannot sue for wrongful levy.").  Plaintiff alleges that "[a]t the time the government's levies were issued . . . , Hyped had billed and was owed significant amounts" of money, but does not otherwise allege a "specific, possessory" interest in the levied funds akin to a lien or security interest.  ECF No. 55 at 7.  While Hyped alleges that its business relationships with the levy sources were "conducted informally," it fails to put forth any evidence that it held a lien on the levied funds.  ECF No. 55-1 at 3 (Missirlian

7

Declaration). Accordingly, as an unsecured creditor, Hyped does not have standing to bring this action, and thus has not met its burden to establish the necessary "ownership interest in the property levied." *Kopec*, 70 F. Supp. 2d at 219. Granting summary judgment in favor of Defendant is, therefore, appropriate.

## II. The IRS Levies Were Not Wrongful

Defendant contends that the IRS levies were not wrongful because there is no genuine issue of material fact as to whether the United States' tax liens against the levied funds have priority over any interest Hyped may have, if any. ECF No. 50-1 at 21–22. Defendant further argues that "any interest that Hyped held in the levied property was necessarily acquired from Wonder subject to the preexisting federal tax liens." *Id.* at 22. Plaintiff counters that any money generated from its placement of "temporary workers with the levy sources" are "beyond the reach of any levy to collect Wonder property." ECF No. 55 at 12–13. Plaintiff further argues that the "IRS collected more in levy proceeds than [it is] entitled to." *Id.* at 13.

Although the Court does not need to reach this issue in light of its finding that Plaintiff has not met its burden of demonstrating an interest in the levied funds, the Court also finds that Plaintiff has not met "the ultimate burden" of proving that the levies were wrongful. *Kopec*, 70 F. Supp. 2d at 219. "The transfer of property subsequent to the attachment of the [federal tax] lien does not affect the lien, for it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere." *United States v. Bess*, 357 U.S. 51, 57 (1958); *United States v. Aiello*, No. 11-cv-1886, 2013 WL 3998468, at *4 (E.D.N.Y. Apr. 15, 2013), *report and recommendation adopted*, 2013 WL 2383001 (E.D.N.Y. May 30, 2013) (quoting *Bess* and finding that "the recording of the government's lien ensured its priority over any subsequent transferee"). In other words, "[o]nce a federal tax lien has attached to a

taxpayer's property pursuant to section 6321, that property remains subject to the lien even if the property is later transferred from the taxpayer to a third party." *Snyder v. United States*, No. 88-cv-2136, 1995 WL 724529, at *7 (E.D.N.Y. July 26, 1995), *report and recommendation adopted*, No. 88-cv-2136 (E.D.N.Y. Aug. 18, 1995) (ECF No. 45).

On August 27, 2020, the IRS sent Wonder a letter "demanding payment of Wonder's past-due tax liabilities by September 11, 2020, and warning Wonder that the IRS would begin collecting via levy if the taxes were not paid." ECF No. 56-1 ¶ 31. Pursuant to the Internal Revenue Code, the tax liens on the levied funds arose at the time the IRS made its assessment and sent Wonder a letter in August 2020. *See* 26 U.S.C. § 6322 ("[T]he lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time."). Accordingly, by the time Wonder and Hyped entered into the APA, any potential interest Hyped may have had in any levied funds was necessarily encumbered by the federal tax liens. Thus, Plaintiff has failed to establish a genuine issue of material fact as it relates to whether Hyped has an interest in or lien on, the levied funds superior to Defendant's interest.

Plaintiff does not directly address whether its interest in the levied funds is superior to Defendant's, and instead argues that Defendant cannot "demonstrate that 100% of the levy proceeds it received are the property of Wonder *as distinguished from* property of Hyped." ECF No. 55 at 14 (emphasis in original). In doing so, Plaintiff jumps ahead to the third step in the analysis set forth in *Nassar*: whether the "tax debtor does not own the property levied." 2016 WL 5793737, at *11. The Court need not address Plaintiff's argument because it grants summary judgment in favor of Defendant on the basis that: (i) Plaintiff does not have an

9

ownership interest in the levied funds within the meaning of 26 U.S.C. § 7426(a)(1), and accordingly does not have standing to sue, and (ii) even if it had an ownership interest, Plaintiff has failed to establish a genuine issue of material fact with respect to whether its interest has priority over Defendant's interest.  Nevertheless, the Court finds Plaintiff's argument to be unpersuasive.  ECF No. 55 at 14.  First, Plaintiff presents no evidence that the levy sources agreed to enter into agreements (formal or informal) with Hyped as opposed to Wonder other than a declaration from Missirlian, which contradicts Plaintiff's prior assertions.[7]  *Compare* ECF No. 48-1 ¶¶ 36–37 (Counterstatement to Defendant's Rule 56.1 Statement) ("Plaintiff only purchased existing contracts that were to expire . . . . Plaintiff never purchased Wonder Partners' client list."), *with* ECF No. 55 at 12 ("Hyped . . . did not acquire any of Wonder's receivables nor any contractual rights related to Wonder clients. . . . Hyped merely purchased the client list. . . ."). Accordingly, Missirlian's declaration alone is insufficient to support Plaintiff's contention that the levy sources agreed to do business with Hyped.  *See Shantou Real Lingerie Mfg. Co., Ltd. v. Native Grp. Int'l Ltd.*, 401 F. Supp. 3d 433, 438 (S.D.N.Y. 2018) ("[A] party cannot escape summary judgment . . . by submitting self-serving affirmations that contradict prior testimony asserted in depositions, interrogatories, or affidavits.").  Moreover, as Defendant points out, Plaintiff itself admits that "[c]lients were still paying Wonder . . . instead of Plaintiff," ECF No. 48-1 ¶ 41, and at least one client, Ringo, has asserted that it did business with Wonder and "did not become aware of any entity operating under the name of 'Hyped' . . . until on or

---

[7]  In discovery, Plaintiff allegedly did not provide Defendant with copies of contracts with any third parties at issue in the instant wrongful levy action with the exception of one, Kedrion. However, the $18,241.06 levy payment was made for services "owed to Wonder Partners Inc." ECF No. 50-55 (Kedrion Letter attaching check to IRS dated October 5, 2021); *see also* ECF No. 56 at 8 (Defendant Motion).

about May 19, 2021." ECF No. 50-42 at 10 (Declaration of Managing Director of Ringo in *Hyped Holdings LLC v. Ringo, LLC*, No. 610622/2021 (N.Y. Sup. Ct.)). As a result, Plaintiff has failed to establish a genuine issue of material fact as to whether the levy proceeds Defendant received are the property of Hyped as opposed to Wonder.[8]

### III. Plaintiff's Failure to Serve Defendant Warrants Dismissal Without Prejudice Pursuant to Rule 4(m)

Defendant argues that "a third independent ground for dismissal . . . is that Hyped never made valid service of process" on Defendant. ECF No. 50-1 at 25. Plaintiff does not dispute that it did not properly serve Defendant, but instead contends that "procedural deficiencies . . . do not warrant dismissal." ECF No. 55 at 15.

Rule 4(m) of the Federal Rules of Civil Procedure provides that, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—*must* dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m) (emphasis added). Plaintiff filed its complaint on February 8, 2022, and its amended complaint on September 23, 2022. ECF Nos. 1, 26. To date, Plaintiff has not served Defendant. ECF No. 56 at 13.

---

[8] In its opposition, Plaintiff argues that this Court cannot enter judgment in favor of Defendant because of Defendant's suggestion that Hyped is the alter ego or successor of Wonder. *See* ECF No. 55 at 10 n.7; *see also* ECF No. 26 ¶ 1 (Amended Complaint) (alleging that Defendant issued a "Notice to Alter Ego of Federal Tax Lien Filing" to Plaintiff and asserted that Plaintiff was an alter ego and successor in interest of Wonder). The Court agrees with Defendant that it need not reach the issue of whether Hyped is Wonder's successor or alter ego. *See* ECF No. 50-1 at 13 n.4. As discussed previously, the Court need not determine whether the "tax debtor does not own the property levied," the third step in the *Nassar* analysis because it grants summary judgment in favor of Defendant on other grounds. 2016 WL 5793737, at *11.

11

Because the Court grants summary judgment in favor of Defendant, it does not need to alternatively dismiss the action for insufficient service of process. The Court notes, however, that Plaintiff's counsel's neglect in failing effectively to serve Defendant is not a showing of good cause, and the Court would have dismissed the action without prejudice as required by Rule 4(m) if necessary. *See Smalls v. City of New York*, No. 15-cv-3017, 2019 WL 1243823, at *5 (E.D.N.Y. Mar. 18, 2019) ("Prolonged attorney neglect is not . . . an excuse [for failure to timely serve.]"); *Zapata v. City of New York*, 502 F.3d 192, 199 (2d Cir. 2007) (upholding the district court's refusal to extend time where the represented plaintiff "made no effort to effect service within the service period" and "neglected to ask for an extension within a reasonable period of time").

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS the motion for summary judgment and dismisses Plaintiff's amended complaint. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

                                              */s/ Hector Gonzalez*
                                                   HECTOR GONZALEZ
                                                   United States District Judge

Dated: Brooklyn, New York
         September 19, 2023